Jordan Susman, Esq. (SBN 246116)
jsusman@nolanheimann.com
Margo Arnold, Esq. (SBN 278288)
marnold@nolanheimann.com
NOLAN HEIMANN LLP
16000 Ventura Boulevard, Suite 1200
Encino, California 91436
Telephone: (818) 574-5710
Fax: (818) 574-5689

Attorneys for Plaintiff
Prime Alliance Bank, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME ALLIANCE BANK, INC., a Utah corporation, | Case No.: |
| Plaintiff | **COMPLAINT FOR DAMAGES** |
| vs. | |
| DRE HEALTH CORPORATION, a Missouri corporation; and A. ISAAC BAWANY, AKA AHMED I. BAWANY, AND AHMED ISHAQ BAWANY, an individual | |
| Defendants. | |

1
COMPLAINT

Plaintiff Prime Alliance Bank, Inc. ("**Prime Alliance**"), by and through its counsel, hereby alleges and complains against the above-named Defendants as follows:

## THE PARTIES

1. This action arises out of the breach of a valid and binding lease agreement entered into between Liberty Commercial Finance LLC ("**Liberty**") as predecessor in interest to Prime Alliance, on the one hand, and DRE Health Corporation ("**DRE**"). DRE is at times referred to herein as "**Lessee**".

2. Plaintiff Prime Alliance is a Utah corporation with its principal place of business in Davis County, Utah.

2. Prime Alliance alleges on information and belief that Defendant DRE Health Corporation is a Missouri corporation with its chief executive office located at 5700 W. 112th Street, Leawood, KS 66211.

3. Prime Alliance alleges on information and belief that Defendant A. Isaac Bawany, aka, Ahmed I. Bawany and Ahmed Ishaq Bawany, is an individual residing at 12921 Canterbury Circle, Leawood, KS 66224 ("**Bawany**" or at times "**Guarantor**").

4. All of the Defendants are collectively referred to herein as "**Defendants**."

5. Prime Alliance is informed and believes and based thereon alleges that Defendants at all times relative to this action, were the agents, servants, partners, joint venturers and/or employees of each of the other Defendants and, in doing the acts alleged herein, were acting with the knowledge and consent of each of the other Defendants in this action.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action based on diversity of citizenship and the value of the claim is in excess of $75,000 pursuant to 28 U.S.C. § 1332(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Master Lease Agreement and Schedule

8. On or around February 11, 2021, Liberty, as "Lessor" having an address of 18302 Irvine Boulevard, Suite 300, Tustin, CA 92780, and DRE, as "Lessee", entered into that certain Master Equipment Lease Agreement #32141 ("**Master Lease Agreement**"). A copy of the Master Lease Agreement is attached hereto as Exhibit "A".

9. Under the terms of the Master Lease Agreement, Liberty agreed to lease to Lessee, and Lessee agreed to lease from Liberty, the equipment described in the Master Lease Agreement or designated on any schedule thereto.

10. Each schedule constituted a separate and enforceable lease incorporating all the terms of the Master Lease Agreement.

11. Pursuant to the Master Lease Agreement, Liberty and Lessee entered into that certain Equipment Schedule No. 01 dated February 11, 2021 (the "**Schedule**"). A copy of the Schedule is attached hereto as Exhibit "B".

12. Under the Schedule, Liberty leased to Lessee certain equipment as more particularly described in the Schedule, the original cost of which was Two Million Three Hundred Fifty-Six Thousand Eight Hundred Sixty-Seven and 70/100 Dollars ($2,356,867.70) (the "**Equipment**").

13. Pursuant to the Schedule, Lessee covenanted to pay to Liberty monthly rent payments in the sum of Seventy-Seven Thousand Seven Hundred Five and 93/100 Dollars ($77,705.93) throughout the term of that particular lease, which initial term was 36 months from its commencement ("**Monthly Rent Payment**").

14. On or about August 26, 2021, DRE and Liberty executed that certain Addendum to Equipment Schedule No. 01, wherein among other changes, the Equipment was amended and restated, the cost of the Equipment was amended and restated to be Two Million One Hundred Forty-Two Thousand Six Hundred Seven and 01/100 Dollars ($2,142,607.01), and the Monthly Rent was amended and restated to be Seventy Thousand Eight Hundred Eighty-One and 73/100 Dollars ($70, 881.73) ("**Addendum No. 1**"), all as

provided in Addendum No. 1.  A copy of Addendum No. 1 is attached hereto as part of the Schedule attached as Exhibit B.

15. On or around August 25, 2021, DRE executed that certain Certificate of Acceptance ("**Certificate of Acceptance**"), in which DRE certified that all of the Equipment (as defined therein) had been delivered to and received by Lessee as required and provided in the Schedule and that the Equipment was accepted for all purposes under the Schedule. A copy of the Certificate of Acceptance is attached hereto as Exhibit "C".

16. On or about August 26, 2021, Liberty and DRE entered into that certain Addendum to Equipment Schedule Deferred Funding ("**Addendum No. 2**"), supplementing the Master Lease Agreement to provide for Lessor to fund the total Equipment Cost (as defined in Addendum No. 2) for the benefit of Lessee, notwithstanding that certain items of the Equipment had not been delivered to and accepted by Lessee, provided Lessee agreed to the Addendum No. 2. A copy of Addendum No. 2 is attached hereto as Exhibit "D".

17. The Master Lease Agreement, the Schedule, and addenda are at times collectively referred to herein as the "**Lease**".

### Guaranty of the Lease

18. On or about February 17, 2021, Bawany executed that certain Personal Guaranty dated February 11, 2021 ("**Guaranty**"), wherein Bawany guaranteed the prompt payment and/or performance of all indebtedness, obligations and liabilities at any time owing to Liberty under the Lease, whether now existing or hereafter arising, as more particularly provided in the Guaranty.  A copy of the Guaranty is attached hereto as Exhibit "E".

19. The Guaranty is one of payment and performance, and not of collection.

20. Bawany, as Guarantor, waived against Liberty any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the

Obligations (as defined in the Guaranty) or in the Guaranty, including any demand whatsoever.

21. The Guaranty provides that Guarantor shall be liable for all attorneys' fees and other costs and expenses incurred in connection with enforcement of the Guaranty, together with interest on all amounts recoverable under the Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment as provided in the Guaranty.

22. The Guarantor agreed that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth in the Guaranty.

23. The Guaranty provides that Liberty may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights under the Lease to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated.

**Assignment of the Lease**

24. The Equipment under the Lease was to be purchased pursuant to a progress funding structure, wherein Prime Alliance would pay directly to the supplier's Lessee, the invoices issued by such supplier, as more particularly provided in the progress funding agreements. Prime Alliance paid all such invoices fully and timely and complied with all other requirements of the progress funding structure, including paying all invoices for the cost of the Equipment.

25. Pursuant to that certain Amended and Restated Master Purchase Agreement dated as of September 5, 2018 ("**Purchase Agreement**") and accompanying Memorandum of Assignment (Progress Payments) ("**Memorandum of Assignment Progress Payments**") for the Schedule, Liberty transferred and assigned to Prime Alliance all of Liberty's right, title and interest in and to the items as more particularly provided in the Memorandum of Assignment Progress Payments.

26. Pursuant to the Purchase Agreement and accompanying Amended and Restated Memorandum of Assignment (Purchased Payment Stream) ("**Memorandum of Assignment Payment Stream**"), Liberty transferred and assigned to Prime Alliance all of Liberty's right, title and interest in and to the items as more particularly provided in the Memorandum of Assignment Payment Stream.  A copy of the Purchase Agreement, the Memorandum of Assignment Progress Payment, and the Memorandum of Assignment Payment Stream is attached hereto as Exhibit "F".

27. As part of the Purchase Agreement, Liberty granted to Prime Alliance all right, title and interest in the Lease, along with a first position security interest in and lien upon all of Liberty's right, title, and interest in and to all the Equipment leased pursuant to the Lease.

28. Prime Alliance's security interest in the Equipment is evidenced by the UCC financing statements of record with the Missouri Secretary of State, as well as the UCC fixture filings on record with the Jackson County Recorder's Office.  Copies of the UCC filings are attached hereto as Exhibit "G".

29. Lessee executed that certain Notice and Acknowledgement of Assignment ("**Notice**"), wherein, as more particularly provided in the Notice, Lessee acknowledged the assignment from Liberty to Prime Alliance of the Schedule.   A copy of the Notice is attached hereto as Exhibit "H".

30. As more particularly provided in the Notice and expressly acknowledged by Lessee, Lessee acknowledged that the Equipment was in DRE's possession at the address specified in the Lease, and that the Equipment had been fully and finally accepted by DRE. DRE also agreed to pay directly to Prime Alliance, all rents and other payments including, without limitation, all rentals, stipulated loss value payments, termination payments, applicable later charges, attorneys' fees and expenses of collection and enforcement of the Lease, and all other sums due and to become due under the Lease.

31. DRE also covenanted in the Notice to not assert against Prime Alliance "any claim, defense, counterclaim, recoupment, setoff or right to cancel or terminate the Lease."

**Defendants Breach the Lease and the Guaranty**

32. The Lease provides that all payments of Monthly Rent shall be made to Prime Alliance on the first day of each month in advance.

33. Lessee is in default of the Lease if, among other events, Lessee fails to pay any Monthly Rent or other amount due under the Lease within ten days after the same shall have become due; Lessee becomes insolvent; Lessee violates or fails to perform any provision of the Lease; or there is a material adverse change in Lessee's financial condition since the Rent Commencement Date (as defined in the Lease).

34. On April 1, 2022, Lessee failed to make the Monthly Rent Payment due to Prime Alliance under the Schedule.

35. Lessee has also failed to timely remit to Prime Alliance the Monthly Rent Payment due under the Schedule on each of May 1, 2022, June 1, 2022, August 1, 2022, and September 1, 2022.

36. Lessee has stopped making all payments to Prime Alliance as required pursuant to the Lease.

37. On or about June 14, 2022, Counsel for Prime Alliance sent to DRE a written demand letter, placing DRE in default and requesting that the past due payments as of that date be made to Prime Alliance ("**Demand Letter**"). A copy of the Demand Letter is attached as Exhibit "I".

38. DRE failed to comply with the Demand Letter.

39. The Lease also provides that Lessee shall at all times during the Term of the Lease and at the Lessee's own cost and expense, maintain insurance covering the Equipment as more particularly provided in the Lease.

40. Prime Alliance was notified that DRE has not paid the insurance premium and that the insurance policy has not yet been renewed.

41. Pursuant to Section 22 of the Lease, Lessee was obligated to furnish to Prime Alliance as soon as available, and in any event within one hundred twenty (120) days after the last day of each fiscal year, accountant prepared audited financial statements of Lessee

and Guarantor and as soon as available, and in any event within sixty days after the last day of each fiscal quarter, company prepared financial statements to include both a balance sheet and income statement ("**Statements**").

42. Section 5 of the Master Lease Agreement provides that if Lessee fails to pay any Monthly Rent or other sum due under the Lease on or before the date when the same becomes due, Lessee shall pay to Lessor a late charge equal to the lesser of five percent (5%) of such delinquent amount or the maximum permitted by law.

43. Section 5 of the Master Lease Agreement further provides that amounts which remain unpaid more than thirty days after the applicable due date shall accrue interest at the lesser of 1.5% per month or the maximum permitted by law until paid in full.

44. Prime Alliance is also entitled to interest on all past due amounts due under the Lease as provided in the Lease.

45. Following demands from Prime Alliance, Bawany claimed he would make the payments due under the Lease. Bawany failed to do so.

46. The Lease further provides that Prime Alliance shall have the right to enter upon the premises where the Equipment is located and inspect the Equipment during normal business hours and upon reasonable prior notice to Lessee.

47. In the event of default, Lessor is entitled to exercise all rights and remedies as provided in the Lease.

48. Section 18 of the Master Lease Agreement provides that Lessor, among Lessor's other rights and remedies, may: proceed by appropriate court action to enforce performance by Lessee of the related Lease or to recover damages, for the breach thereof; cause Lessee, at Lessee's expense, promptly to assemble Equipment and return the same to Lessor at such place as Lessor may designate in writing; enter upon the premises of the Lessee or other premises where any Equipment may be located and, without notice to Lessee and with or without legal process, take possession of and remove all or any such Equipment without liability to Lessee by reason of such entry or taking possession; by

notice in writing to Lessee, as liquidated damages for the loss of a bargain and not as a penalty, accelerate and declare to be immediately due and payable the Stipulated Loss Value (as defined in the Lease) under such Lease without any presentment, demand, protest or further notice, at which time the same shall become immediately due and payable; and/or sell the Equipment and/or Collateral at public or private sale or hold, keep idle or lease to others any Equipment.

49. Section 18 of the Master Lease Agreement also provides that interest on the Stipulated Loss Value (as defined in the Lease) accrues at the lesser of 1.5% per month, or the maximum rate allowed by law, from the date declared due until paid in full.

50. Section 21 of the Master Lease Agreement provides that Lessee shall pay all reasonable costs and expenses of Lessor, including, without limitation, reasonable attorneys' and other professional fees, the fees of any collection agencies and appraisers and all other costs and expense related to any sale or re-lease of Equipment (including storage costs) incurred by Lessor in enforcing any of the terms, conditions or provisions hereof or in protecting Lessor's rights hereunder.

**FIRST CLAIM FOR RELIEF**
**(Breach of Master Lease Agreement Against DRE)**

51. Prime Alliance realleges and incorporates by reference the allegations of all preceding paragraphs.

52. The Master Lease Agreement with its accompanying documents and agreements is a valid, binding, and enforceable contract.

53. Prime Alliance is the owner and holder of all rights as Lessor under the Master Lease Agreement.

54. Prime Alliance has fully performed all of its obligations under the Master Lease Agreement and any other associated agreement.

55. Lessee defaulted on its obligations under the Master Lease Agreement by failing to remit to Prime Alliance Monthly Rent Payments as set forth in the Master Lease Agreement and the Schedule, and such failure continued for ten (10) days.

56. Lessee defaulted on its obligations under the Master Lease Agreement by failing to carry in the insurance as required under the Master Lease Agreement.

57. Lessee has failed to provide to Prime Alliance the Statements as required in the Lease.

58. There are no unsatisfied conditions precedent to Prime Alliance bringing its breach of lease claim stemming from the breaches of the Lease.

59. Prime Alliance has suffered damages stemming from Lessee's breaches, including, but not limited to, unpaid Monthly Rent Payments, together with any and all late fees, default interest, taxes and additional costs and fees including attorney fees and costs incurred by Prime Alliance, together with interest thereon.

60. Prime Alliance has suffered additional damages stemming from Lessee's breaches, including risk of the Equipment being damaged, lost, destroyed, etc., while uninsured as required under the Lease.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract: Schedule Against DRE)

61. Prime Alliance realleges and incorporates by reference the allegations of all preceding paragraphs.

62. The Schedule, with its accompanying documents and agreements is a valid, binding, and enforceable contract.

63. Prime Alliance is the owner and holder of the Schedule.

64. Prime Alliance has fully performed all of its obligations under the Schedule and any other associated agreement.

65. Lessee defaulted on its obligations under the Schedule by failing to remit to Prime Alliance the Monthly Rent Payments as set forth in the Schedule, and such failure continued for ten (10) days.

66. There are no unsatisfied conditions precedent to Prime Alliance bringing its breach of lease claim stemming from the breaches of the Schedule.

67. Prime Alliance has suffered damages stemming from Lessee's breaches, including unpaid Monthly Rent Payments, together with any and all late fees, default interest, taxes and additional costs and fees including attorney fees and costs incurred by Prime Alliance, together with interest thereon.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract: Guaranty Against Bawany)

68. Prime Alliance realleges and incorporates by reference the allegations of all preceding paragraphs.

69. The Guaranty, with its accompanying documents and agreements is a valid, binding, and enforceable contract.

70. Prime Alliance is the owner and holder of the Guaranty.

71. Prime Alliance has fully performed all of its obligations under the Guaranty and any other associated agreement.

72. Bawany defaulted on his obligations under the Guaranty by failing to remit to Prime Alliance the Monthly Rent Payments as set forth in the Master Lease Agreement and the Schedule.

73. There are no unsatisfied conditions precedent to Prime Alliance bringing its breach of lease claim stemming from the breaches of the Guaranty.

74. Prime Alliance has suffered damages stemming from Guarantor's breaches, including unpaid Monthly Rent Payments, together with any and all late fees, default interest, taxes and additional costs and fees including attorney fees and costs incurred by Prime Alliance, together with interest thereon.

### FOURTH CLAIM FOR RELIEF
### (Replevin/Attachment/Inspection Against All Defendants)

75. Prime Alliance realleges and incorporates by reference the allegations of all preceding paragraphs.

76. Section 18(b) of the Master Lease Agreement provides in relevant part:

> Upon the occurrence of a Default, Lessor may do one or more of the following as Lessor in its sole discretion shall elect: (ii) cause Lessee, at its expense, promptly to assemble Equipment and return the same to Lessor at such place as Lessor may designate in writing; . . (iv) enter upon the premises of Lessee or other premises where any Equipment may be located and, without notice to Lessee and with or without legal process, take possession of and remove all or any such Equipment without liability to Lessee by reason of such entry or taking possession.

77. In accordance with Rule 64 of the Federal Rules of Civil Procedure, at the commencement or throughout any action, Prime Alliance may seek any remedy available under applicable state law providing for the seizing of property to secure satisfaction of a potential judgment, including attachment, garnishment, replevin, and other corresponding or equivalent remedies.

78. Prime Alliance hereby reserves its right to inspect, attach or recover the Equipment made subject to the Lease.

79. Pursuant to appropriate filings and rights, Prime Alliance reserves the right to take all measures necessary to remove the Equipment and to protect the Equipment in accordance with the terms of the Lease, or as otherwise available to it under applicable law.

WHEREFORE, Plaintiff Prime Alliance prays for an award against Defendants, and each of them, as follows:

1. For judgment in favor of Prime Alliance and against DRE, finding that DRE breached the Master Lease Agreement.

2. For judgment in favor of Prime Alliance and against Defendant, finding that DRE breached the Schedule.

3. For judgment in favor of Prime Alliance and against Bawany, finding that Bawany breached the Guaranty.

5. For award in favor of Prime Alliance and against Defendants, jointly and severally, awarding Prime Alliance all damages to which it is entitled under the Lease,

the Guaranty, and applicable law.

6. For pre-award interest at the maximum amount as provided by statute or by contract.

7. For award in favor of Prime Alliance against Defendants awarding attorney fees and costs as provided under the Lease and the Guaranty.

8. For award and decree adjudging and decreeing that Prime Alliance is entitled to immediate possession, use and enjoyment of the Equipment, superior to all right, title or interest of defendants and all other parties claiming under Defendants.

9. For such other and further relief as the Court may deem to be just and proper.

Dated: September__, 2022

NOLAN HEIMANN, LLP

By:_____
Jordan Susman
Attorneys for Plaintiff
Prime Alliance Bank, Inc.